UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
MARK DEBELL,

                              Plaintiff,

             -against-                    **MEMORANDUM AND ORDER**
                                                09-CV-3491 (SLT) (RER)

MAIMONIDES MEDICAL CENTER,

                              Defendant
------------------------------------------------------------------x
**TOWNES, United States District Judge:**

        Plaintiff Mark Debell brings this action pursuant to the Family and Medical Leave Act

("FMLA"), the Americans with Disabilities Act of 1990 ("ADA"), and the New York City

Administrative Code ("NYCHRL") against defendant Maimonides Medical Center ("defendant",

"hospital", or "Maimonides"), alleging violations of his rights in connection with the termination

of his employment with the hospital on April 6, 2009.  On January 21, 2011, Defendant filed a

motion for summary judgment pursuant to Fed. R. Civ. P. 56.  For the reasons set forth below,

defendant's motion is granted in part and denied in part.

### *BACKGROUND*

        Although there are disputes concerning exactly what transpired surrounding plaintiff's

employment with the hospital, the following facts are not in dispute.

        Plaintiff commenced his full-time employment with Maimonides in or around June 2002

as an Operating Room Attendant.  Defendant's Rule 56.1 Statement of Undisputed Facts

("Maimonides' Statement") at 1; Plaintiff's Statement Pursuant to Local Civil Rule 56.1

("Plaintiff's Statement") at 1.  He had previously worked for Maimonides as a temporary

employee working in the supply room.  Maimonides Statement at 2; Plaintiff's Statement at 2.

Pamela Mestel, Executive Director of Perioperative Services, offered Plaintiff a full-time

position at Maimonides. Maimonides Statement at 3; Plaintiff's Statement at 3. His job responsibilities consisted of supplying the operating rooms with the necessary equipment and ensuring they were fully stocked with all necessary supplies. Maimonides Statement at 4; Plaintiff's Statement at 4. In his position as an Operating Room Attendant, plaintiff was a union member. Maimonides Statement at 5; Plaintiff's Statement at 5.

When plaintiff commenced employment with the hospital, he attended the hospital's orientation program, where the Family and Medical Leave Act was discussed. Maimonides Statement at 7, 8; Plaintiff's Statement at 7, 8. At some point before January 2005, plaintiff took a leave of absence from the hospital after which he was reinstated to his position with no loss in pay or benefits. Maimonides Statement at 12; Plaintiff's Statement at 12.

On January 24, 2005, plaintiff was promoted to the position of Instruments Coordinator for the Hospital's Perioperative Services Department. Maimonides Statement at 13; Plaintiff's Statement at 13. His supervisors in the Department were Pamela Mestel, Executive Director of Perioperative Services, Nicholas D'Amato, Assistant Director of Perioperative Services, and Marion Contino, Assistant Director of Perioperative Services. Maimonides Statement at 14; Plaintiff's Statement at 14. His job responsibilities included overseeing the supply rooms in ambulatory surgery and supervising employees on the fourth floor of the hospital. Maimonides Statement at 15; Plaintiff's Statement at 15. In or around 2006, Plaintiff was transferred to ambulatory surgery to run supplies, a job which required him to go to the hospital's warehouse to obtain supplies needed for the operating rooms. Maimonides Statement at 17; Plaintiff's Statement at 17.

Plaintiff took leaves of absence on a number of occasions without penalty during his employment with Maimonides. Maimonides Statement at 98, 101; Plaintiff's Statement at 98,

2

101. Before April 2009, he was permitted to take time off to see his doctors. Maimonides Statement at 102; Plaintiff's Statement at 102. He was informed that he was eligible for leave under the FMLA and received a Notice of Employee Rights Under the FMLA from the hospital. Maimonides Statement at 21, 22; Plaintiff's Statement at 21, 22. In relation to another leave of absence, plaintiff thought that the leave he was taking under the FMLA was disability leave. Maimonides Statement at 25; Plaintiff's Statement at 25. On April 26, 2007, plaintiff took a leave of absence to have an angiogram. Maimonides Statement at 18; Plaintiff's Statement at 18. He returned to work on May 30, 2007. Maimonides Statement at 28; Plaintiff's Statement at 28.

On June 28, 2007, plaintiff took another leave of absence from the hospital for surgery to repair a torn meniscus and was scheduled to be out until August 2, 2007. Maimonides Statement at 32, 33; Plaintiff's Statement at 32, 33. He received disability benefits for the duration of his leave. Maimonides Statement at 34; Plaintiff's Statement at 34. He filled out a leave of absence request on Maimonides' standard Leave of Absence form and provided the hospital with an FMLA physician's certification. Maimonides Statement at 35, 37; Plaintiff's Statement at 35, 37. Plaintiff's requested leave was approved by the hospital. Maimonides Statement at 38; Plaintiff's Statement at 38. Plaintiff received a return to work disposition letter which advised the hospital that he could return to work on August 13, 2007, which he did. Maimonides Statement at 44; Plaintiff's Statement at 44. He was paid by the hospital for the period he was on leave and received disability benefits. Maimonides Statement at 45; Plaintiff's Statement at 45. Upon his return, plaintiff was restored to his position. Maimonides Statement at 35; Plaintiff's Statement at 35.

Subsequently, plaintiff was transferred into the ambulatory surgery unit with no change in his job position. Maimonides Statement at 48; Plaintiff's Statement at 48. After approximately

3

one year, he returned to the fourth floor. Maimonides Statement at 49; Plaintiff's Statement at

49. On March 28, 2008, plaintiff took another leave of absence from the hospital to have lap-

band surgery. Maimonides Statement at 51; Plaintiff's Statement at 51. He was on leave for

three weeks. When plaintiff returned to work, he was restricted in some activities, including his

ability to lift anything over 10 pounds. Maimonides Statement at 55; Plaintiff's Statement at 55.

His job required that he lift instruments that weighed more than 10 pounds, so the hospital

provided assistance with those responsibilities that required such lifting. Maimonides Statement

at 56, 57; Plaintiff's Statement at 56, 57. Ms. Mestel approved every leave of absence plaintiff

requested while employed by the hospital. Maimonides Statement at 58; Plaintiff's Statement at

58.

In 2009 Plaintiff was transferred to the Sterilization Unit, where he was supervised by

Ivonne Torres and received new training. Maimonides Statement at 62, 63; Plaintiff's Statement

at 62, 63. In this position, plaintiff collected and cleaned the dirty instruments from the operating

rooms while wearing two pairs of gloves, a face shield mask, a hat, and a plastic robe.

Maimonides Statement at 65; Plaintiff's Statement at 65.

Plaintiff suffered from psoriasis for approximately twenty years. Prior to April 2009, his

psoriasis never prevented him from performing his job responsibilities or caused him to request a

leave of absence. On the morning of Friday, April 3, 2009, plaintiff advised his supervisor,

Ivonne Torres, that his psoriasis was bothering him, and he could not work that day.

Maimonides Statement at 72, 73; Plaintiff's Statement at 72, 73. Ms. Torres, Mr. D'Amato, and

Ms. Contino all told plaintiff to leave work and see his physician for treatment. Maimonides

Statement at 74; Plaintiff's Statement at 74. Ms. Contino asked plaintiff to make an appointment

to see Ms. Mestel on Monday after he saw his physician. Maimonides Statement at 75;

4

Plaintiff's Statement at 75. Plaintiff did not go to his physician or emergency room at any time from Friday, April 3, 2009 to Sunday, April 5, 2009. Maimonides Statement at 76, 77; Plaintiff's Statement at 76, 77.

On April 6, 2009,[1] plaintiff met with Ms. Contino and Ms. Mestel, after which he returned his beeper and hospital I.D. Maimonides Statement at 87; Plaintiff's Statement at 87. Human resources investigated plaintiff's claim that he was terminated from the hospital. Carmen Aldohono, Labor Relations Associate, conducted the investigation and concluded that plaintiff resigned from the hospital. Maimonides Statement at 103, 104, 111; Plaintiff's Statement at 103, 104, 111.

Shortly after plaintiff separated from the hospital, there were budget cuts and numerous layoffs. Maimonides Statement at 116; Plaintiff's Statement at 116. All of the functions previously performed by plaintiff were transferred to other existing positions. Maimonides Statement at 120; Plaintiff's Statement at 120. Plaintiff has not worked since his separation from Maimonides. Maimonides Statement at 114; Plaintiff's Statement at 114.

**Procedural History**

Plaintiff filed an amended complaint on May 20, 2010 containing five causes of action, alleging that the hospital: (1) violated the Family and Medical Leave Act (FMLA) by failing to notify him of his rights under the FMLA; (2) violated the FMLA by refusing to allow plaintiff to be treated by his physician and terminating his employment in response to his request for leave; (3) violated the Americans with Disabilities Act of 1990 ("ADA") by refusing to offer plaintiff "a reasonable accommodation" or to engage in an "interactive process" with plaintiff; (4)

---

[1]Both parties' Rule 56.1 Statements state this date as April 6, 20*10*, which appears to be in error, as related events occurred on April 6, 200*9*.

violated the New York City Administrative Code ("NYCHRL") for failing to offer plaintiff a "reasonable accommodation" or to engage in an "interactive process" with plaintiff; and (5) violated the ADA and the NYCHRL by terminating plaintiff's employment on the basis of his disability instead of offering him a reasonable accommodation.

Defendant filed its motion for summary judgment pursuant to Fed. R. Civ. P. 56 on January 21, 2011.

## DISCUSSION

### The Summary Judgment Standard

Summary judgment is appropriate only when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the burden of showing that there is no genuine issue of fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). If the movant meets this burden, the non-movant "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir. 1990). The non-movant cannot avoid summary judgment "through mere speculation or conjecture" or "by vaguely asserting the existence of some unspecified disputed material facts." *Western World*, 922 F.2d at 121 (internal quotations and citations omitted). Moreover, the non-movant cannot rely on hearsay testimony which would not be admissible if testified to at trial. *See, e.g., Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*, 183 F.3d 155, 160 (2d Cir. 1999); Fed. R. Civ. P. 56(e).

### Plaintiff's ADA Claim

Plaintiff claims that the hospital discriminated against him in violation of the ADA by refusing to offer him a reasonable accommodation for his alleged disability. To state a prima

6

facie case of disability discrimination under the ADA, plaintiff must show that (1) the hospital is subject to the ADA; (2) he suffers from a disability within the meaning of the ADA; (3) he is otherwise qualified to perform his job; and (4) he suffered an adverse employment decision because of his disability. *Shannon v. New York City Transit Auth.*, 332 F.3d 95, 99 (2d Cir. 2003).

Defendant argues that plaintiff is unable to show that he suffers from a disability within the meaning of the ADA. To establish a disability, courts consider: (1) "whether the plaintiff suffered from a physical or mental impairment," (2) whether "'the life activity' upon which the plaintiff relied ... constitutes a major life activity under the ADA," and (3) whether "the plaintiff's impairment 'substantially limited' [the] major life activity identified." *Jacques v. DiMarzio, Inc.*, 386 F.3d 192, 201 (2d Cir. 2004) (quoting *Colwell v. Suffolk County Police Dep't*, 158 F.3d 635, 641 (2d Cir.1998). (citations omitted). Such major life activities include "'... functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working.'" *Missick v. City of New York*, 707 F. Supp. 2d 336, 352 (E.D.N.Y. 2010) (quoting 29 C.F.R. § 1630.2(i)).

To show that he suffers from a physical impairment that limits a major life activity, "a plaintiff cannot rely on 'conjecture or surmise,' and 'must do more than simply show that there is some metaphysical doubt as to the material facts,'" *Heilweil v. Mt. Sinai Hosp.*, 32 F.3d 718, 723 (2d Cir. 1994) (quoting *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.) and *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Moreover, the Second Circuit has stated in *Daley v. Koch*, 892 F.2d 212, 215 (2d Cir.1989), that a person found unsuitable for a particular position has not thereby demonstrated an impairment substantially limiting such person's major life activity of working.

In the instant case, plaintiff has failed to submit evidence demonstrating that he suffers from a disability that limits a major life activity. In fact, by plaintiff's own deposition testimony, he acknowledges, "I can still work," despite classifying his psoriasis as a "disability." Pl. Tr. at 194. Further, plaintiff states that his psoriasis never required him to take off of work. Pl. Tr. at 207. Plaintiff stated that he was diagnosed with psoriasis approximately twenty years ago and that he has received various treatments, however, he fails to submit any other evidence showing that he is limited in any major life activity due to his psoriasis and fails to make such allegations in his complaint. Pl. Tr. at 131, 133-34, 137.

Moreover, plaintiff's medical evidence does not show that Plaintiff suffers from an ADA-cognizable disability. Plaintiff's dermatologist Dr. Peter B. Milburn testified that he began treating plaintiff's psoriasis on August 12, 2008, but he failed to testify that plaintiff's psoriasis limited plaintiff in any major life activity. Milburn Tr. 22-24, 30-31. Plaintiff's primary care physician, Dr. Edward Fitzpatrick, who saw plaintiff on April 6, 2009, testified that he did not observe any worsening of his psoriasis at that time. At no time did Dr. Fitzpatrick state that plaintiff was unable to work due to his condition. Fitz. Tr. 38-9. Therefore, plaintiff has not demonstrated that he is disabled under the ADA, and Count V of plaintiff's complaint is dismissed. *Jackson v. Nor Loch Manor Healthcare Facility*, 297 F. Supp. 2d 633, 636 (W.D.N.Y. 2004), aff'd 134 F. App'x 477 (2d Cir. 2005) (granting summary judgment to employer on ADA claim where plaintiff "failed to submit any competent evidence that she had a physical impairment that substantially limited a major life activity").

**Plaintiff's NYCHRL Claims**

In order to state a prima facie case of failure to accommodate under the NYCHRL the plaintiff must show that (1) he has a disability as defined by the statutes; (2) his employers had

8

notice of the disability, (3) with reasonable accommodation he could perform the essential functions of his job, and (4) the defendant refused to make reasonable accommodations for his needs. *Missick v. City of New York*, 707 F. Supp.2d 336, 354 (E.D.N.Y. 2010) (citing *Mitchell v. Washingtonville Cent. School Distr.*, 190 F.3d 1, 6 (2d Cir.1999). Further, the statute also "envisage[s] [that] employer and employee engaged in an interactive process in arriving at a reasonable accommodation for a disabled employee." *Vinokur v. Sovereign Bank*, 701 F. Supp.2d 276, 292 (E.D.N.Y. 2002).

Plaintiff's prior failure to establish a cognizable ADA disability, as discussed above, does not require dismissal of her identical NYCHRL claims. "Although . . .the NYCHRL is subject to the ADA's analytical framework, [its] definition[] of disability differ[s] significantly from the ADA-with . . .the NYCHRL's disability definitions being recognized as far broader." *Missick*, 707 F. Supp.2d at 354 (citing *Giordano v. City of New York*, 274 F.3d 740, 753 (2d Cir.2001)); *Sussle v. Sirina Protection Sys. Corp.*, 269 F.Supp.2d 285, 316 (S.D.N.Y. . Thus, state and municipal disability claims are "analytically distinct" from their federal counterpart. *See Epstein v. Kalvin-Miller Intern., Inc.*, 100 F.Supp.2d 222, 229 (S.D.N.Y.2000). Thus, plaintiff's failure to establish that he suffers from a disability within the meaning of the ADA does not necessarily vitiate an otherwise identical NYCHRL claim, at least insofar as plaintiff alleges his employer's failure to reasonably accommodate his alleged disability. *See Sussle*, 269 F.Supp.2d at 316; *Johns-Davila v. City of New York*, 2000 WL 1725418, at *12 (S.D.N.Y. 2000). According to the City code, "'The term 'disability' means any physical, medical, mental or psychological impairment, or a history or record of such impairment.'" *Giordano v. City of New York*, 274 F.3d 740, 753-54(2d Cir. 2001) (quoting N.Y. City Admin. Code § 8-102(16)(a)). Additionally, "[u]nder the regulations promulgated by the EEOC, the term 'physical or mental impairment' has

9

been broadly defined as '[a]ny physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic, skin, and endocrine; ....'" *Constance v. Pepsi Bottling Co. of NY*, 2007 WL 2460688 at *28 (E.D.N.Y. 2007) (quoting 29 C.F.R. § 1630.2(h)(1).

For the reasons set forth below, this Court finds that plaintiff established a prima facie case of failure to accommodate under the NYCHRL. Defendant argues that plaintiff is not disabled within the meaning of the NYCHRL based largely upon defendant's statement in his deposition that he believed he could continue working and thus was not disabled, however, plaintiff has submitted enough evidence that a reasonable juror could conclude that his psoriasis is a disability within the meaning of the statute. Plaintiff demonstrated that he has a "physical impairment" as well as a "history...of such impairment" related to his skin condition through his own deposition testimony, the deposition testimony of his dermatologist, Peter B. Milburn, and the medical notes of his doctor, Dr. Fittzpatrick, dated April 6, 2009. Debell Tr. at 131, 133, and 137; Milburn Tr. at 8; Exhibit K to the Declaration of James A. Brown; *see Constance v. Pepsi Bottling Co. of NY*, 2007 WL 2460688 at *28 (finding a disability when plaintiff's impairment was one listed by EEOC).

With regard to the remaining prongs of the prima facie case of failure to accomodate under the NYCHRL, the hospital had notice of plaintiff's skin condition at least on April 3, 2009, when plaintiff showed his supervisors his sores and explained his condition to them, which defendant does not deny. Further, plaintiff has adduced evidence that if given time to see his

doctors, he may have been able to continue in his position. *See Romanello v. Shiseido Cosmetics America, LTD*, 2002 WL 31190169 at *9 (S.D.N.Y. 2002) ("A leave of absence is one form of reasonable accommodation."). Additionally, Ms. Mestel acknowledged in her deposition that a physician may be able to "give him some alternatives or some treatments where he might be able to perform his job. . ." Mestel Tr. 36-7. Finally, plaintiff has produced evidence creating a factual question as to whether he was terminated, as demonstrated by the personnel review form, signed by Ms. Mestel, which states that defendant "discharged" plaintiff. Ex. I to Brown Decl. Therefore, plaintiff has demonstrated a prima facie case for failure to accommodate under the NYCHRL, and defendant's motion for summary judgment on this claim is denied.

Plaintiff has also adduced evidence to create an issue of material fact as to whether an interactive process occurred regarding plaintiff's alleged disability, therefore, summary judgment is not appropriate at this stage. *See Phillips v. City of New York*, 66 A.D.3d 170, 176 (N.Y.A.D. 1 Dep't 2009) (citing *Barnett v. U.S. Air*, 228 F.3d 1105, 1116 (9th Cir. 2000), *vacated en banc on other grounds*, 535 U.S. 391 (2002)).

**Plaintiff's FMLA Interference Claim**

The FMLA provides that it is "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under ... subchapter [I of the Act]." 29 U.S.C. § 2615(a)(1) (1994). The FMLA further states that the Act entitles an eligible employee up to 12 weeks of unpaid leave during any 12-month period "[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." § 2612(a)(1)(D). The Act defines "serious medical condition" as an "illness, injury, impairment, or physical or mental condition that involves (A) inpatient care in a hospital ... or

11

(B) continuing treatment by a health care provider." § 2611(11).  Department of Labor

regulations provide guidance as to what constitutes a "serious health condition involving

continuing treatment by a health care provider," listing several categories of such conditions. *See*

29 C.F.R. § 825.114(a).  However, an alternative definition provided by § 825.114(a)(2)(iii)

covers periods of incapacity due to a "chronic serious health condition." Such a chronic serious

health condition must require periodic visits to a health care provider for treatment, continue over

an extended period of time, and cause episodic rather than a continuing period of incapacity. See

§ 825.114(a)(2)(iii)(A), (B), and (C); *see also Barnett v. Revere Smelting and Refining Corp.*, 67

F.Supp. 2d 378, 384 (S.D.N.Y. 1999).

    In order to state a prima facie case of interference with FMLA rights, Plaintiff must

demonstrate that: (1) he is an eligible employee under the FMLA; (2) the hospital is an employer

as defined under the FMLA; (3) he was entitled to leave under the FMLA; (4) he gave adequate

notice to the defendant of his intention to take leave; and (5) he was denied benefits to which he

was entitled under the FMLA.  *Divers v. Metro. Jewish Health Sys.*, 2009 WL 103703 at *

(E.D.N.Y. 2009).

    Defendant does not contest that it is an eligible employer under the FMLA nor that

plaintiff is an eligible employee.  Likewise, defendant does not dispute that plaintiff suffered

from a "serious health condition" within the meaning of the FMLA.[2]  However, defendant does

argue that plaintiff failed to provide the hospital with any notice of his intention to take FMLA

leave.  For the reasons set forth below, this Court disagrees.

    Plaintiff alleges that on Friday, April 3, 2009, he advised his immediate supervisor,

---

    [2]Plaintiff has adduced evidence that he suffered a serious health condition within the
meaning of FMLA 29 U.S.C. Sec. 2611(11)(B).  He has sufficiently alleged that he has received
continuing treatment for his psoriasis by his dermatologist Dr. Milburn.  Milburn Tr. 22-24

Ivonne Torres, that his psoriasis had flared up and that he could not continue performing in the decontamination unit that day. Debell Tr. 150. According to plaintiff, after conferring with Ms. Torres, he met with Assistant Director D'Amato and showed him some of plaintiff's psoriasis and open sores. Mr. D'Amato advised plaintiff to leave for the day and suggested that he see his doctor. Debell Tr. At 151. Mr. D'Amato also told plaintiff to schedule a meeting with Executive Director for Perioperative Surgical Services, Pamela Mestel, first thing Monday morning. D'Amato Tr. 22. Before leaving on April 3, plaintiff also spoke with Assistant Director for Perioperative Surgical Services Marion Contino, who stated that she knew plaintiff was not feeling well due to a skin condition. Contino Tr. 13. Plaintiff scheduled an appointment with Ms. Mestel for Monday April 6 at 9am. Debell Tr. at 152.

Plaintiff further alleges that at the April 6 meeting, he requested to go to the doctor, who would be able to "give him treatments where he might be able to perform his job. . ." Mestel Tr. 36-7. According to plaintiff, he was terminated at the meeting, while defendant argues that plaintiff resigned from his position. Pl. Opp. at 7; Def. Motion at 6-7.

Plaintiff has met his burden in stating a prima facie case for interference with FMLA rights. Once notice of the need for leave is provided, an employer has an affirmative duty to make certain inquiries of the employee. In particular, "the employer is on inquiry notice and bears the burden of ascertaining further details to determine whether the leave qualifies for FMLA protection. Sufficient notice is given when the employee requests leave for a covered reason. After a notice of this sort, the employer can inquire further to determine if the FMLA applies. *See Barr v. New York City Transit*, 2002 WL 257823 at *7 (E.D.N.Y. 2002) (quoting

*Price v. City of Wayne*, 117 F.3d 1022, 1026 (7th Cir. 1997)[3]); *see also Barnett v. Revere Smelting & Refining Corp.*, 67 F. Supp. 2d 378, 386 (S.D.N.Y. 1999)(question of fact existed regarding adequacy of employee's FMLA notice where "key question" was whether employer knew the reason for employees' leave request based on its general awareness of employee's medical condition). The Court notes, however, that although the statements made by an employee may give rise to a duty on the party of the employer to inquire into the nature of the employee's need for leave, the employer is not required to be clairvoyant." *Slaughterhouse v. American Building Maint. Co.*, 64 F. Supp. 2d 319, 325 (S.D.N.Y. 1999).

In the instant case, plaintiff has raised a genuine issue of material fact as to whether defendant was on notice that he may need leave pursuant to the FMLA. Plaintiff has presented evidence that he informed several of his supervisors that he was experiencing a psoriasis flare-up and that he was unable to continue working in the sterilization unit. Mestel Tr. at 36-38; D'Amato Tr. at 22, 33; Contino Tr. at 15 . Although plaintiff had never taken FLMA leave for his psoriasis, and he had never experienced a flare-up that interfered with his job performance, plaintiff's evidence that he showed his supervisors his psoriasis sores and stated that he was unable to work in the sterilization unit creates a genuine issue of fact as to whether defendant was put on inquiry notice of plaintiff's request for leave. *See Barr v. New York City Transit*, 2002 WL 257823 at *7 . Defendant argues that because plaintiff was aware of the procedure for requesting and obtaining a leave of absence under the FMLA, as evidenced by plaintiff's multiple leaves of absence during his employment with the hospital, he specifically declined to request FMLA leave in the instant case. This argument, however, is unavailing. An employee is not

---

[3]*See Hale v. Mann*, 219 F.3d 61, 69 (2d Cir. 2000) (noting that FMLA case law is sparse in the Second Circuit).

required to request FMLA leave by name. *See Manuel v. Westlake Polymers Corp.*, 66 F.3d 758, 762 (5th Cir. 1995) (rejecting both of the contentions that the FMLA requires employees not only to invoke the statute's protection by name, but also requires employees to refer to the specific subparagraph of the FMLA under which they claim protection). Plaintiff has adduced evidence that he asked for time off to see his doctor and that he made his supervisors aware that he may be suffering from a condition that was exacerbated by at least part of his employment tasks. Therefore, defendant was put on inquiry notice that plaintiff may need to take FMLA leave. *See Tambash v. St. Bonaventure Univ.*, 2004 WL 2191566 at *11 (W.D.N.Y. 2004) ("Where an employer is aware that an employee may need to take FMLA leave, it would be inconsistent with the remedial purpose of the statute to allow an employer, motivated in part specifically to prevent the employee from obtaining leave under the FMLA, to terminate the individual before a more definitive request for leave could be made.")

**FMLA Retaliation Claim**

In order to state a prima facie case for retaliation under the FMLA, plaintiff must show that (1) he exercised rights protected under the FMLA; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent. *Potenza v. City of New York*, 365 F.3d 165, 168 (2d Cir. 2004).[4] The "[p]laintiff must demonstrate that her taking

---

[4]Retaliation claims brought under the FMLA are examined under the three-step burden-shifting rules established by the Supreme Court in *McDonnell Douglas v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under the test set forth in *McDonnell Douglas*, the plaintiff must first establish a prima facie case of discrimination. If the plaintiff establishes a *prima facie* case, a presumption that the employer unlawfully discriminated against the plaintiff is raised and the burden of production then shifts to the employer to "articulate a legitimate, clear, specific and non-discriminatory reason" for its actions. *Quaratino v. Tiffany & Co.*, 71 F.3d 58, 64 (2d Cir.1995). The employer's burden is "merely one of production, not persuasion; it can involve no credibility assessment ." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S.

FMLA leave constituted 'a negative factor in [Defendant's] decision to terminate' him or her."

*Gillingham v. Geico Direct*, 2008 WL 189671 at *4 (E.D.N.Y. 2008) (citing *Sista v. CDC Ixis*

*North America, Inc.*, 445 F.3d 161, 176 (2d Cir. 2006)); *see also Hale v. Mann*, 219 F.3d 61, 68

(2d Cir.2000) (holding that the FMLA "protects an employee from discharge or demotion by an

employer if that action is motivated by the employee's taking leave pursuant to the FMLA."

For the reasons set forth above, a factual issue exists as to whether plaintiff exercised his

rights under the FMLA by putting the hospital on inquiry notice of his skin condition. Plaintiff

has also raised a genuine issue of material fact as to his qualifications for his position. Plaintiff

has adduced evidence that his supervisor found him to be a good employee and was willing to

take whatever assignment was given to him, while defendant adduces evidence that plaintiff was

the subject of complaints from supervisors and co-workers. D'Amato Tr. At 53; Mestel Aff. at

para. 8. Additionally, plaintiff has adequately raised a question of fact with regard to whether he

suffered an adverse employment action. Plaintiff alleges that he was terminated from his

position in the April 6, 2009 meeting, while the hospital argues that plaintiff resigned. Plaintiff's

Brief in Opposition to Defendant's Motion for Summary Judgment (Pl. Opp.) at 7-9; Defendant's

Brief in Support of Motion for Summary Judgment (Def. Motion) at 6-7. Ms. Contino testified

in her deposition that she was unsure of whether plaintiff resigned or was terminated. (Contino

Tr. At 22). Moreover, Ms. Mestel completed and signed a "personnel review form" on April 7,

---

133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). If the employer satisfies that burden, the plaintiff
has the burden to establish by a preponderance of the evidence that the employer's stated reason
was merely a pretext for discrimination. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 113
S.Ct. 2742, 125 L.Ed.2d 407 (1993). In addition, the plaintiff must submit evidence that would
permit a rational fact-finder to infer that the discharge was actually motivated, in whole or in
part, by discrimination. *See Grady v. Affiliated Cent., Inc.*, 130 F.3d 553, 561 (2d Cir.1997).

2009, checking the box for "resignation" with regard to plaintiff's separation of employment. Therefore, a factual question exists as to whether plaintiff suffered an adverse employment action after informing supervisors of his need to see a doctor for his psoriasis.

Finally, plaintiff has raised an issue of fact as to whether his separation from employment was based upon his alleged request for time off. Although it is undisputed that plaintiff repeatedly requested leave throughout his employment and that the hospital granted such leave in the past, plaintiff has sufficiently asserted retaliatory intent. Courts have held that "the proximity of Plaintiff's termination is insufficient, in and of itself, to support [his] retaliatory discharge claim." Bond v. Sterling; 77 F. Supp. 2d 300, 305 (N.D.N.Y. 1999) (citing McCown v. UOP, Inc., 1995 WL 519818, at *7 (N.D. Ill. 1995) ("If timing alone were sufficient, any employer who granted an employee leave under the FMLA would thereafter have its hands tied regarding any discipline of that employee."). Plaintiff alleges that in addition to the temporal proximity of his alleged termination, Ms. Mestel stated that plaintiff would be "better off with a sit-down job" in light of "all of [his] medical illnesses." Debell Tr. at 155-56. The Court finds that such evidence suffices to make out a *prima facie* case for FMLA retaliation. *Schnabel v. Abramson*, 232 F.3d 83, 87 (2d Cir.2000) ( regarding a claim for FMLA retaliation, the "burden of proof that must be met to establish a *prima facie* case is minimal").

Defendant has satisfied its burden at step two by articulating a non-retaliatory reason for terminating plaintiff. Specifically, it asserts that plaintiff was terminated for various instances of poor performance, which predated his FMLA application. Mestel Aff. At para. 8.

At step three, the "ultimate question at this final stage is whether plaintiff adduced admissible evidence that would permit a reasonable jury to find that his termination was motivated by having filed for intermittent leave under the FMLA." *Di Giovanna v. Beth Israel*

17

*Medical Center*, 651 F. Supp.2d 193, 205 (S.D.N.Y. 2009) "'[T]he mere establishment of a *prima facie* case in the face of a proffered reason for the adverse employment action is not necessarily a sufficient quantum of evidence to warrant submission to a jury.'" *Id.* (quoting *Casanova v. General Mills Restaurants, Inc.*, 1997 WL 473840 at *3 (E.D.N.Y. 1997). To defeat summary judgment, plaintiff need not show that defendant's proffered reason was false or played no role in the decision to terminate him, but only that it was not the only reason, and that his filing for FMLA leave was at least one motivating factor. *Di Giovanna*, 651 F. Supp.2d at 605. To determine this, the court must use a case by case approach that evaluates " 'the strength of the plaintiff's *prima facie* case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports [or undermines] the employer's case.' " *Id.* (quoting *Matlosz v. J.P. Morgan Chase*, 2005 WL 2242196 at *6 (S.D.N.Y. 2005)).

In the instant case, defendant rebuts plaintiff's *prima facie* case by presenting proof (1) that plaintiff was not terminated, but resigned; and (2) that plaintiff experienced problems with his job performance. Def. Opp. at 3, 23. As determined above, plaintiff has established that a question of material fact exists with regard to whether he was terminated. Regarding plaintiff's job performance, defendant submits only the affidavit of one of plaintiff's supervisors, Ms. Mestel, to support its contention that plaintiff was the subject of complaints from his supervisors and co-workers. Plaintiff rebuts such evidence with the deposition testimony of another of his supervisors, Mr. D'Amato, in which the deponent states that plaintiff was never a disciplinary problem and was not the subject of complaints. D'Amato Tr. at 53. With such testimony, albeit sparse, defendant is unable to rebut plaintiff's *prima facie* case with its equally meager evidence. Therefore, the Court denies defendant's motion for summary judgment on plaintiff's FMLA retaliation claim.

18

## Conclusion

For the reasons stated above, defendant's motion for summary judgment is granted in part dismissing Count V of plaintiff's complaint, which count alleges violation of the Americans with Disabilities Act of 1990 as amended.  Defendant's motion is denied in all other respects.


**SO ORDERED.**


SANDRA L. TOWNES
United States District Judge


Dated: Brooklyn, New York
      September 30, 2011

19